[No. 15254. Department Two. May 28, 1919.]

THE STATE OF WASHINGTON, *on the Relation of John P. Carlson et al., Plaintiff,* v. THE SUPERIOR COURT FOR KITSAP COUNTY, *Walter M. French, Judge, Defendant.*[1]

EMINENT DOMAIN (15, 39)—PRIVATE WAY OF NECESSITY—EVIDENCE —SUFFICIENCY. Under Rem. Code, § 5857-1, giving the right to condemn a private way of necessity where it is necessary for the proper use and enjoyment of premises, the burden on the petitioner to show a reasonable necessity is not satisfied by proof that the way sought is his most practicable way of egress and ingress, where he had a present right of way by grant over other premises which much of the testimony showed was capable of being made passable at some inconvenience and added expense, yet within bounds; the statute not being favored in law and the rule of necessity more strict between private owners than for public service companies.

EASEMENTS (13)—WAY OF NECESSITY. On the sale of part of a tract, cut off from access, an easement or right of way by necessity over the grantor's other land is implied.

Certiorari to review a judgment of the superior court for Kitsap county, French, J., entered February 18, 1919, upon findings in favor of the petitioner, in proceedings to condemn a private way of necessity, after a hearing before the court. Reversed.

*Geo. H. Rummens* and *Walter Schaffner,* for plaintiff.

*Bryan & Garland,* for defendant.

[1]Reported in 181 Pac. 689.

CHADWICK, C. J.—C. H. Davis, whom we shall refer
to as the petitioner, brought a proceeding in the court
below to condemn a private way of necessity over and
across the lands of the relators.  Some seven years
ago, Davis bought a tract of ten acres from his father,
D. J. Davis.  The tract was land-locked.  A county
road ran along the north boundary of the D. J. Davis
land and along the west boundary of the land of the
relators.  Petitioner has improved his land, and for
the seven years of his ownership has maintained a way
over the lands of his father.  Conceiving the way over
his father's land to be less convenient and less prac-
ticable, as it is a little longer and more circuitous than
a way over relators' land would be, petitioner brought
a proceeding to condemn a private way of necessity
along the north line of relators' property.  After a
full hearing and a view by the court, an order of neces-
sity was made, and the court proceeded forthwith to
call a jury and took an assessment of damages.

The testimony is, in a sense, conflicting; but when
measured by the history of the case and the privileges
and demands of the statute, we find no difficulty in
reaching a conclusion.  We shall refer briefly to the
testimony of the witnesses:

D. J. Davis, petitioner's grantor, testified that the
only feasible or practical way for C. H. Davis to get
out from his property to a public road is over the Carl-
son property; that to go any other way it would cost
more to build a road than the Davis tract is worth.
C. H. Davis, the petitioner, testified that there was
no other practicable or feasible way for him to get
from his land to a public road; that the present trail
over his father's tract was, during the greater part
of the year, impassable and could not be made pass-
able; that children could not go to school over it, and

that merchants had refused to deliver goods to his family unless a road was established. Other witnesses testified that the road was impassable for the greater part of the year as it now exists; that the way was over high and difficult hills and low boggy ground. Others testified that there was no reasonable way out of the tract unless it be over the Carlson land.

Relator testified that as good a grade could be made across the Davis land as across his land, and for an equal amount of money; that he could, at a reasonable cost, build a good road across the D. J. Davis land at a grade not exceeding five per cent at any place; that it would be necessary to make a steep grade down a hill and a bridge at least one hundred feet long to go over his land; that he has cleared and seeded to grass the boggy ground on the north line of his place; that a road over it would have to be filled or planked so as to make a passable roadway in the wintertime; that he had worked for a road contractor for several years and knew the cost of road construction, and that a road could be built as cheaply and conveniently over the one way as the other. He further testified that he had dammed the creek and excavated a large fish pond on the line of the proposed way at a cost of over three hundred dollars, and that the establishment of a way of necessity would ruin it.

A. P. McDonald testified that he had eighteen years' experience in road building, had worked for lumbering companies, laid out roads for them, and knew in a general way all that anybody does in regard to laying out roads. He further testified:

"I was one of the viewers appointed by the court in the first case brought by the plaintiff against the Carlsons, which case was dismissed. I looked over this matter very carefully, and came to the conclusion that I could not determine whether it would be more feas-

ible to build a road across the D. J. Davis land or across the Carlson land. I could not do this unless I made an accurate survey of it, and I was not employed to do that. I came to the conclusion, as best I could without an actual survey, that it was about an even break between the two,—that is, one road would be about as good as the other, and would cost about as much. It is not possible for anybody to tell accurately about one of these roads without a survey. There would be some grading to do on both roads. There would be more grading on the Davis land than on the Carlson, but there would not be as many fills or as long a bridge on the Davis land.''

A brother of relator testified that there would be no material difference in cost; that a road over the Davis land would be better because it would not have a steep grade on it; that there would be a very steep grade to go from the petitioner's land to the relators' land; that the grade would land on a bridge, and that a road fifteen feet wide could not be built without making a deep cut away back on the petitioner's land.

Mr. Anderson, county assessor, testified that, in order to get off the Davis land onto the Carlson land, a bridge at least sixty feet long would have to be built. In rebuttal, D. J. Davis testified that, if a road was put over his land, it would require a bridge forty or fifty feet long.

It is argued that the way over the Davis land is impassable and impractical, and out of these things a necessity arises.

The court found that the establishment of a private way of necessity over relators' land was necessary and that the petitioner had no means of ingress or egress from his premises, and that the most practical route for the roadway was over and upon the land of the relators. From these findings the court concluded that there was a necessity for the establishment of a road-

way from the lands of the petitioner, and that the most practicable route for said road is along the north line of relators' property. We are called upon to review the order of necessity.

When D. J. Davis sold a part of his land to the petitioner, an easement or way of necessity was implied in the grant. This was the rule of the common law. It has been followed almost, if not quite, universally in other states and has never been questioned in this state. *Schulenbarger v. Johnstone*, 64 Wash. 202, 116 Pac. 843, 35 L. R. A. (N. S.) 941, and cases there cited. So that the question of law is whether one, having a legal right to pass over the lands of his grantor, may reject the way that the law gives him and which his grantor cannot deny him, and compel a way of necessity over the lands of a stranger, where, upon a mere admeasurement of convenience and expense, it is held that the way over the land of the stranger is the more practicable than the way over the land of the grantor.

At common law, and with us, there is no such thing as a way of necessity over the lands of a stranger, for a way of necessity arises out of contract and is grounded in the doctrine of estoppel. *Schulenbarger v. Johnstone, supra.* So it may be said that, notwithstanding a statute gives a land-locked owner the right to condemn a way of necessity over the lands of a stranger, it is not a favored statute, and the taking will not be tolerated unless the necessity is paramount in the sense that there is no other way out or that the cost is prohibitive, for it must be borne in mind that, after all, this is a condemnation proceeding. We are taking the property of one man and giving it to another. Const., art. 1, § 16. There is a constitutional right involved, and such rights should not be so lightly regarded that they may be swept away to serve convenience and advantage merely.

The statute provides:

"An owner . . . of land which is so situate with respect to the land of another, that it is necessary for its proper use and enjoyment to have and maintain a private way of necessity . . . on, across, over or through the land of such other, for agricultural, domestic, or sanitary purposes, may condemn and take lands of such other sufficient in area for the construction and maintenance of such private way of necessity." Laws 1913, p. 412, § 1 (Rem. Code, § 5857-1).

The burden of proof is on the petitioner to show a reasonable necessity. We are of opinion that the petitioner did not maintain this burden; and further, that the legal conclusion of necessity does not follow a finding that the way over relators' lands was the most practicable way of egress and ingress from and to the petitioner's lands.

The testimony shows no more than this: That the way over the grantor's land would be over a hill that must be graded, over a small stream that must be bridged, and boggy ground that must be planked or filled; that, to go over relators' land, a deep cut would have to be made in the hill or bench ground to allow the road to descend to the low ground; that a stream— probably the same stream—would have to be bridged; that the boggy ground would have to be planked or filled. While it may be said that neither way is practical and convenient as it is, it does not follow that either way may not be made so. There is a difference between necessity and mere convenience. A man having a present right of way may find a more convenient way over the land of another, but he may not take it under a claim that it is necessary to the proper use and enjoyment of his land or to save expense, unless there is no other passable way or the expense would be prohibitive. It is true that Davis, the grantor, has

testified that a road over his land would cost more than the petitioner's land is worth, but he is not borne out by the history of the case.

On this phase of the case we are most impressed with and, as against the testimony of interested witnesses, are inclined to follow, the testimony of the witness McDonald. That he is a man of standing and judgment we infer from the fact that he was one of the commissioners appointed by the court upon a previous hearing of this same matter. The only difference that we can measure is that, of the two routes, the one over the Davis land would be longer, slightly circuitous, and would possibly cost more to improve, while the way over the land of the relators would be shorter and follow a straight line.

We give no heed to the testimony that the way over the Davis land is impassable, for it is plain that the witnesses had in mind the winter season and the present condition of the land. The same may be said of the relators' land. Both ways are impassable and impracticable in the winter season without improvement, and when petitioner bought his land with the implied right to go and come over the land of his grantor, he took upon himself the burden of improving the way, and that burden will not be measured by relative cost. To illustrate: Say an owner had cleared his land out of the big timber and had seeded it to grass or crops, and an adjoining owner of uncleared land had sold a tract within his own enclosure to a stranger, could it be said that the land-locked owner, having an implied way of necessity over his grantor's land, could condemn a way over the cleared land of the stranger because it was more convenient and would be less expensive than it would be to cut down the trees and grub out the stumps on his grantor's land?

The general subject of necessity is treated in 21 R. C. L., p. 1214 *et seq.* While the text and the cases there cited deal generally with ways of necessity in the strict sense, as distinguished from the condemnation of a private way of necessity, we apprehend that the same rule would apply, for, assuredly, a greater interest could not be condemned than would arise under the implications of a grant. It will be noticed that there is a division of authority, some cases holding that the necessity requisite to create a right of way (or, as we may say, to give a right of condemnation) must be absolute and indispensable, and others that no more is required than a showing of reasonable necessity; that it is sufficient if it be shown that no other way can be made without unreasonable labor and expense, and that the reasonableness of the labor and expense is determined by the cost of creating the way as compared with the value of the property. But however this may be, it is said that mere inconvenience, no matter how great, will not sustain the right to insist upon a way of necessity. In this state we have perhaps adopted the rule of reasonable necessity. *Samish River Boom Co. v. Union Boom Co.,* 32 Wash. 586, 73 Pac. 670; *State ex rel. Mountain Timber Co. v. Superior Court,* 77 Wash. 585, 137 Pac. 994; *State ex rel. Washington Boom Co. v. Chehalis Boom Co.,* 82 Wash. 509, 144 Pac. 719.

In the *Samish River Boom Co.* case, *supra,* it is said:

"But the word 'necessity,' as used in the statute, 'does not mean an absolute and unconditional necessity, as determined by physical causes, but a reasonable necessity, under the circumstances of the particular case, dependent upon the practicability of another route (here another location), considered in connection with the relative cost to one, and probable injury to the other.' "

The word "necessity" cannot be defined in such a way as to meet every case; its meaning must be found in the facts and circumstances disclosed in the instant case, and while the words used by the court in the *Samish River Boom Co.* case might seem to apply to the case at bar, considering the facts in this case and the facts in the cases cited, we are not inclined to follow them without qualification. In this case, as we have shown, it is a mere matter of inconvenience and added expense, but yet within bounds, to an individual owner. In the cases cited, it was a necessity arising out of the needs of a public service corporation, where either the line of a railroad over a general route or the windings and physical features of a stream were to be considered.

But certain it is that the rule should be more strict between private owners, who are strangers in title, than between public service corporations, who are in law representing a necessity common to the whole public. In law, the land of D. J. Davis is the land of the petitioner. A way of necessity

"never exists where a man can get to his property through his own land. That a road through his neighbours would be a better road, more convenient, or less expensive, is not to the purpose; . . . It is only where there is no way through his own land, that right of way over the land of another can exist." *McDonald v. Lindall,* 3 Rawle (Pa.) 492.

See, also, *Hyde v. Jamaica,* 27 Vt. 443; *Alley v. Carleton,* 29 Tex. 74, 94 Am. Dec. 260; *Carey v. Rae,* 58 Cal. 159.

A few of the states have constitutional provisions with reference to the taking of ways of necessity in eminent domain similar to our own; Georgia is one of these. In *Gaines v. Lunsford,* 120 Ga. 370, 47 S. E. 967, 102 Am. St. 109, it was shown that the plaintiff's farm

was touched by two "settlement" roads, and that he could have reached either over his own land without crossing the plantation of Gaines. It was claimed, however, that a farm road from plaintiff's dwelling would have to cut across a deep cut or obstruction in his field; that it would have been expensive to have constructed the route over the same, and that a way thus laid out would lead to "settlement" roads which were steep, hilly, and in such bad condition that it was impossible to haul more than half a load. The court held that the constitution provides for ways of necessity, but not for those of convenience, and upon the authority of *Chattanooga R. & S. R. Co. v. Philpot,* 112 Ga. 153, 37 S. E. 181, that:

"If there is a way by which the applicant can lawfully reach his farm or place of residence, a case of necessity does not exist,"

and that, if the land could be reached, although by a distant or difficult road, the one claiming a way of necessity is not entitled thereto.

The principle is well stated in *Lawton v. Rivers,* 2 McCord (S. C. Law Rep.) 445, 13 Am. Dec. 741:

"But there must be an actual necessity, and not a mere inconvenience, to entitle a person to such right. One man is not required to subject himself to an inconvenience, and much less to an actual loss, for the accommodation of another. I do not mean to say that there must be an absolute and irresistible necessity; an inconvenience may be so great as to amount to that kind of a necessity which the law requires, and it is difficult, and perhaps impossible, to lay down with exact precision the degree of inconvenience which will be required to constitute a legal necessity. It is apparent, however, that no such necessity existed in this case. The plaintiff has a navigable water-course from his door to the public road or highway, by which the distance is not greater than by land; and although

there may be some inconvenience in being obliged always to go by water when he visits his plantation, yet it is not greater than necessarily attends every insular situation, and perhaps not so great to him as it would be to his neighbor, to keep up a lane through his plantation for his accommodation; and even if it was greater, it was one of which he was aware when he purchased (or those under whom he claimed), and may, therefore, be considered of his own creation.''

We hold that petitioner has not maintained the burden of proof, and that, although the finding of the court be sustained that the way over relators' land is more practicable than a way over the land of petitioner's grantor would be, this in itself is insufficient to sustain a legal conclusion of necessity.

Reversed.

MITCHELL, TOLMAN, and MOUNT, JJ., concur.