100 So.2d 722

**SOUTHERN RAILWAY COMPANY**

v.

**J. T. HALL.**

6 Div. 935.

Supreme Court of Alabama.

Oct. 31, 1957.

Rehearing Denied March 6, 1958.

Bankhead & Petree, Jasper, for appellant.

Weaver & Snoddy, Haleyville, for appellee.

GOODWYN, Justice.

Appellee, J. T. Hall, brought a proceeding in the probate court of Winston County against appellant, Southern Railway Company, to acquire, pursuant to Code 1940, Tit. 19, §§ 56–58, a way of necessity from his lands across the railway company's right of way and tracks to Alabama Highway No. 195. From a judgment in favor of appellee the appellant appealed to the circuit court (Code 1940, Tit. 19, § 17) where the case was heard without the intervention of a jury on evidence given ore tenus. The present appeal is from the judgment there rendered in favor of appellee and from the judgment overruling appellant's motion for a new trial (Code 1940, Tit. 19, § 23; Ala-

bama Power Co. v. Henson, 237 Ala. 561, 564, 187 So. 718).

Hall is the owner of a tract of land consisting of about 185 acres located along the west right of way line of the railway company, and not within the corporate limits of any municipality. Alabama Highway No. 195 runs along the east right of way line of the railway company opposite Hall's land. The right of way sought by Hall is a strip 15 feet wide (the limit set by § 56, Tit. 19) (increased to 30 feet by Act No. 537, approved Sept. 18, 1957) and 100 feet long running from his land to Highway No. 195, and located about midway between the north and south lines of his tract of land. There appears to be no question that no public road or highway is adjacent or contiguous to any part of his land along its west and south boundaries. The evidence discloses that there is a public crossing over the railway company's right of way from the land of one Sport Armstrong (which adjoins Hall's land on the north) to Highway No. 195, but that crossing is located about one-half mile north of the northeast corner of Hall's tract. There is no indication that said crossing is adjacent or contiguous to Hall's land nor that Hall, either individually or as a member of the public, has any right of way over Armstrong's land running from Hall's land to said crossing. There is evidence of a crossing over the railway company's right of way from Highway No. 195 to Hall's land, known as the "clay pit crossing," which is located to the south of the crossing sought by Hall. It is the existence of this crossing which is the determinative factor in this case.

 Hall testified that he had used the "clay pit" crossing but contends that such use was by sufferance of the railway company, which has the right to close it at any time. On the other hand, the railway company, throughout the proceedings, has taken the position that Hall already has access to the highway from his lands by way of the "clay pit" crossing and should not be allowed to burden the company's right of way with an additional crossing, simply for the purpose of providing Hall with a more convenient means of access. It is apparent from the pleadings and evidence that the railway company has not only recognized Hall's right to use the "clay pit" crossing but actually contends that it is a public crossing, in use as such for some 30 years or more. In other words, the only party questioning Hall's right to use it is Hall himself. What was said in Davenport v. Cash, 261 Ala. 380, 382, 383, 74 So. 2d 470, 471, is of particular significance here, viz.:

"* * * In the case of Carter v. Barkley, 1908, 137 Iowa 510, 115 N.W. 21, 22, the court said:

"'It is undoubtedly true that, if the plaintiffs had either a public or a private way to their land, they could not maintain this proceeding; but the statute evidently does not contemplate that the owner who claims to have no way to his land shall be compelled, before inviting the aid of the statute, to try one or more lawsuits for the purpose of finding out whether he has a way or not. The statute, in our judgment, should be construed to mean that, unless a party has a way, either public or private, which is unobstructed and unquestioned, he may institute proceedings under the statute.'

"Appellant cites this case as authority for the proposition that he should not be compelled to litigate the public character of the 'Old Bankhead Church Road.' But it must be noted that the appellant is the only one who contends that this old road is not a public one. It is a way out from appellant's land and over appellee's land, and the latter contends it is a public road.

"* * * * * *

"And in Strawberry Point District Fair Society v. Ball, 1920, 189 Iowa 605, 177 N.W. 697, where it was shown

that an absolute private right of way was tendered to the petitioner, his right was denied. Then in the later case of Anderson v. Lee, 1921, 191 Iowa 248, 182 N.W. 380, 381, the Carter case was cited authoritatively even though the decision did hold that a ten-foot private way was not such a reasonably adequate way as would defeat the right to condemn.

"The rule in the Carter case seems to us to be sound, and, though we agree with counsel for appellant that in order to discharge his burden of proving a negative, i. e., that his land is not 'adjacent or contiguous to any public highway,' the petitioner under our statute should not be compelled to unsuccessfully litigate every conceivable route and 'ancient trailways,' in the instant case, the fact that the appellant is the only party claiming that the 'Old Bankhead Church Road' is not a public road renders the way 'unquestioned' within the meaning of the Carter case (we emphasize that the Bankhead Road proceeding eastwardly to the main highway traverses only the property of the appellee) [and the "clay pit" crossing traverses only the property of the railway company]. We are not disposed to go beyond the Carter case and say that under our statute the public road or highway touching petitioner's land must be one that is free from physical obstruction and 'reasonably sufficient for the purpose' if such were the intent of the holding in the Anderson case, supra."

The Davenport case holds, in effect, that a right of way cannot be acquired under §§ 56–58, Tit. 19, supra, if the petitioner has sufficient access from his land to a public road or highway by means of either a private or public right of way; also, that if a sufficient way across defendant's land is in use by petitioner and his right to use such way is not questioned, but is recognized, by the defendant, the petitioner cannot acquire, under said statutory provisions, another right of way across defendant's land.

The obvious purpose of the statute is to provide a means whereby a landowner, enclosed on all sides by lands of others and unable to get to his land from a public road or highway, can get relief by condemning a right of way to it across intervening land. However, if such landowner already has a reasonably adequate way to and from his land, there is no field of operation for the statute. On the other hand, if there is no reasonably adequate means of access he may acquire, as provided in the statute, "a convenient right of way not exceeding in width fifteen feet over the lands intervening and lying between such tract or body of land and the public road nearest or most convenient thereto." But the fact that a presently existing means of access is not as desirable to the landowner as another route would be is not the test. If an existing access is reasonably adequate for the purpose of giving the landowner an outlet to a public road or highway, there is no basis under the statute for condemning another outlet across the intervening land. One owner of a tract of land may consider an access road best for his purposes and a later owner of the same land, for his purposes, might consider another route more desirable and convenient. Thus, it can be seen that if the convenience of the owner were the test, the land of an intervening owner might well be burdened with several rights of way across it, the number varying in proportion to the different uses to which the several successive owners might put the land. We do not think the purpose of the statute was to do more than to assure that land which is not adjacent or contiguous to a public road or highway can be reached from such a road or highway. In other words, the burden is on the petitioner for a right of way to show that he has no reasonably adequate outlet. We do not think the evidence shows that appellee's use of the "clay pit" crossing is attended with any difficulty except that it connects with his land near its southern portion and not near its center where he proposes to erect

his home. No doubt it would be a convenience for appellee to have an outlet nearer the location of his proposed home. But we do not think the statute authorizes the taking of lands of another as a mere matter of convenience. In this connection, we quote the following from State ex rel. Carlson v. Superior Court, 107 Wash. 228, 181 P. 689, 691:

"So it may be said that, notwithstanding a statute gives a landlocked owner the right to condemn a way of necessity over the lands of a stranger, it is not a favored statute, and the taking will not be tolerated unless the necessity is paramount in the sense that there is no other way out or that the cost is prohibitive, for it must be borne in mind that, after all, this is a condemnation proceeding. We are taking the property of one man and giving it to another. * * *"

From Roberts v. Prassenos, 219 Miss. 486, 69 So.2d 215, 216, 217, is the following:

" * * * The statute does not contemplate granting one citizen or corporation a right of way through the property of another citizen or corporation as a matter of mere convenience or as a mere matter of saving expense. There must be real necessity before private property can be invaded by a citizen for private purposes, if that can be done at all. The right to the control and use of one's property is a sacred right, not to be lightly invaded or disturbed. When property may be taken from a citizen for any purpose by law, the method for so doing must be strictly pursued, and the party seeking to take the property of another must come squarely within the statute."

We are at the conclusion that the judgment is due to be reversed and the cause remanded.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and COLEMAN, JJ., concur.