This is a private-condemnation case. The circuit court, acting pursuant to Ala. Code 1975, § 18-3-1, granted Etoile Nichols a nonexclusive, private easement for ingress and egress over the property of Lula Dell Cater. Cater was awarded $500 in compensation for the condemnation of the private easement. Cater appealed. The Court of Civil Appeals, on October 9, 1998, affirmed, without an opinion. Cater v. Nichols (No. 2970710),771 So.2d 511 (Ala.Civ.App. 1998) (table). We granted Cater's petition for the writ of certiorari to determine whether the trial court erred in finding that two other possible routes to and from Nichols's property were not reasonably adequate means of access. We conclude that Nichols failed to satisfy her burden of proving the necessity for the easement and that the trial court incorrectly applied the law to the facts of this case. Therefore, we reverse and remand.
 I.
Nichols owns a 191-acre tract of land in Monroe County. No one lives on the property, and it is used primarily as timberland. The property is divided into western and eastern parcels by a creek, known as Flat Creek, which runs in a generally southeasterly direction across the property. Flat Creek is deep enough to prevent fording, but it is only 12 to 15 feet wide. The western part of Nichols's property contains 33 acres, and the eastern part contains 158 acres. The eastern part of Nichols's property is accessible by a private road that connects to a public road; the western part, Nichols claims, is landlocked. The easement granted by the trial court is 12 feet wide and 500 yards long; it follows an existing gravel road, which was used for several years as a county road but has since been abandoned. Cater uses this road to access her property, and Nichols also used this road to access her property until Cater erected a gate across it.
Nichols's property was once part of an approximately 622-acre tract of land, owned by Nichols's father, that fronted Alabama Highway 21. She acquired her property from her father. While Nichols's father owned the larger tract, he accessed the western part of what Nichols now owns by a private road. That road, which runs from that western portion southward, still exists, but is in disrepair and is impassable during the winter. Cater's property is located to the west of Nichols's property and is separated from Nichols's property by another parcel. The owner of the parcel separating Cater's property from Nichols's property is not a party to this action. Cater's property fronts a public road.
Nichols petitioned the Probate Court of Monroe County to condemn a right-of-way over Cater's property to provide Nichols with an outlet to the public road that is adjacent to Cater's property. See Ala. Code 1975, §§ 18-3-1 and 18-3-3. The probate court granted Nichols a right-of-way, and Cater appealed to the Circuit Court of Monroe County.
After conducting an ore tenus hearing, the circuit court entered a judgment in favor of Nichols, making, in pertinent part, the following findings of facts and conclusions of law:
 "The lands of [Nichols] . . . do not abut any public road or way, and [Nichols] does not have other means of access to such lands. [Nichols] seeks to acquire in this proceeding a non-exclusive easement for ingress and egress, 12 feet wide, which runs in a generally West to East direction across the lands of [Cater] for a distance of approximately 500 yards, the centerline of such easement *Page 1119 
being the centerline of a former public road or way which is still identifiable.
 "The easement or right-of-way which [Nichols] seeks to obtain in this proceeding is the nearest and most convenient means of access to her said property. The possible alternate means of access suggested by [Cater] are not most convenient in that they would require clearing or construction of roadbeds, and would not be readily suitable for use in wet weather.
 "[Nichols] is the owner of the lands which lie immediately East of Flat Creek, and which are adjacent to her lands which are the subject of this proceeding. The depth and width of Flat Creek through the lands of [Nichols are] such that the Creek cannot be crossed without construction of a bridge. [Cater] argues that since [Nichols] has access to her adjoining lands on the East side of the Creek that she is not `landlocked,' and therefore lacks standing under the condemnation statute to obtain the easement sought in this proceeding. In resolving this issue, the Court concludes that a consideration of the relative inconvenience and burden to the respective parties is proper. If [Nichols] is not allowed to have an easement across the lands of [Cater], in order to have access to her lands West of the Creek, [Nichols] would be required to construct a bridge. The Court finds and concludes that the burden which would be imposed upon [Cater] by an access easement in favor of [Nichols] is less than the burden which would be imposed upon [Nichols] by constructing and maintaining a bridge across Flat Creek."
Cater appealed to the Court of Civil Appeals. The Court of Civil Appeals, without opinion, affirmed the circuit court's judgment.
 II.
Ala. Code 1975, § 18-3-1, provides:
 "The owner of any tract or body of land, no part of which tract or body of land is adjacent or contiguous to any public road or highway, shall have and may acquire a convenient right-of-way, not exceeding in width 30 feet, over the lands intervening and lying between such tract or body of land and the public road nearest or most convenient thereto. . . ."
Under the ore tenus rule, a trial court's findings of fact are presumed correct and its judgment will be reversed only if plainly or palpably wrong or against the preponderance of the evidence. See DeWitt v. Stevens, 598 So.2d 849, 850 (Ala. 1992); Brothersv. Holloway, 692 So.2d 845, 848 (Ala.Civ.App. 1997); Tate v.Loper, 459 So.2d 892, 894 (Ala.Civ.App. 1984). The ore tenus rule is especially applicable in private condemnation cases under § 18-3-1. See Tate, 459 So.2d at 894; see also Brothers, 692 So.2d at 847-48 ("We note that our standard of review in condemnation cases is highly deferential.").
However, § 18-3-1 "`is not a favored statute,'" Southern Ry.v. Hall, 267 Ala. 143, 147, 100 So.2d 722, 725 (1957) (quotingState ex rel. Carlson v. Superior Court, 107 Wn. 228, 232,181 P. 689, 691), and the ore tenus presumption of correctness "does not apply where the trial court has incorrectly applied the law to [the] facts," DeWitt, 598 So.2d at 850. The law applicable to private-condemnation proceedings under the statute is well established. As this Court has stated:
 "If one has a way through his own land, he cannot impose a `way of necessity' through his neighbor's land, unless his own way is not reasonably adequate or its cost is prohibitive. Mere inconvenience or mere cost, as the basis for using another's land to get access to one's own property, falls short of meeting this test."
Oyler v. Gilliland, 382 So.2d 517, 519 (Ala. 1980) (citations omitted). *Page 1120 
Cater, relying mainly on Southern Railway Co., argues that the trial court erred in granting Nichols a right-of-way over Cater's property because, she says, Nichols had two other reasonably adequate means of access: she says that at a minimal cost Nichols could either 1) build a bridge over Flat Creek and thereby gain access across the eastern portion of her land to the private road that connects to the public road; or 2) repair the private road formerly used by Nichols's father and thereby have access southward to Highway 21. In Southern Railway Co., this Court held that the trial court erred in granting the petitioner a right-of-way because the petitioner already had an existing means of access to his lands — the "clay pit crossing." In that case, the petitioner had sought a right-of-way over the lands of the defendant railroad company, a right-of-way that would have been more convenient than the clay pit crossing. This Court, construing § 18-3-1 (then codified at Title 19, § 56, Code of Ala. 1940), stated:
 "The obvious purpose of the statute is to provide a means whereby a landowner, enclosed on all sides by lands of others and unable to get to his land from a public road or highway, can get relief by condemning a right of way to it across intervening land. However, if such landowner already has a reasonably adequate way to and from his land, there is no field of operation for the statute. On the other hand, if there is no reasonably adequate means of access he may acquire, as provided in the statute, `a convenient right of way not exceeding in width fifteen feet over the lands intervening and lying between such tract or body of land and the public road nearest or most convenient thereto.' But the fact that a presently existing means of access is not as desirable to the landowner as another route would be is not the test. If an existing access is reasonably adequate for the purpose of giving the landowner an outlet to a public road or highway, there is no basis under the statute for condemning another outlet across the intervening land. One owner of a tract of land may consider an access road best for his purposes and a later owner of the same land, for his purposes, might consider another route more desirable and convenient. Thus, it can be seen that if the convenience of the owner were the test, the land of an intervening owner might well be burdened with several rights of way across it, the number varying in proportion to the different uses to which the several successive owners might put the land. We do not think the purpose of the statute was to do more than to assure that land which is not adjacent or contiguous to a public road or highway can be reached from such a road or highway. In other words, the burden is on the petitioner for a right of way to show that he has no reasonably adequate outlet. We do not think the evidence shows that appellee's use of the `clay pit' crossing is attended with any difficulty except that it connects with his land near its southern portion and not near its center where he proposes to erect his home. No doubt it would be a convenience for appellee to have an outlet nearer the location of his proposed home. But we do not think the statute authorizes the taking of lands of another as a mere matter of convenience. In this connection, we quote the following from State ex rel. Carlson v. Superior Court, 107 Wn. 228, [232,] 181 P. 689, 691:
 "`So it may be said that, notwithstanding a statute gives a landlocked owner the right to condemn a way of necessity over the lands of a stranger, it is not a favored statute, and the taking will not be tolerated unless the necessity is paramount in the sense that there is no other way out or that the cost is prohibitive, for it must be borne in mind that, after all, this is a condemnation proceeding. We are taking the property of one man and giving it to another.'" *Page 1121 
267 Ala. at 146-47, 100 So.2d at 724-25 (emphasis added). Thus, under § 18-3-1, a landowner is not entitled to condemn a right-of-way across a neighbor's intervening land if the landowner has an existing, reasonably adequate means of access to his property, or if he could construct such access without prohibitive expense.
Cater contends that Nichols could build a bridge across Flat Creek with no undue burden and thereby gain access across the eastern part of the Nichols property to the private road that connects to the public road. Cater cites Condry v. Laurie,184 Md. 317, 41 A.2d 66 (1945). In Condry, the Maryland Court of Appeals stated:
 "Of course, if the cost of constructing a road over one's land as a means of access to the public highway would require unreasonable expense out of proportion to the value of the land, then there exists such necessity for a way over the [neighbor's] land as to justify recognition of a way by implication. But the court will not recognize a way of necessity if another road to the public highway can be made without unreasonable expense, even though the other road may be much less convenient. Mere inconvenience will not be sufficient to justify the finding of a way of necessity."
184 Md. at 322, 41 A.2d at 68 (emphasis added). The Maryland court's statement is in accord with Alabama law. Cater asserts that the record contains no evidence of what it would cost Nichols to build a bridge across Flat Creek, and, thus, certainly no evidence to indicate that the cost of the bridge would be prohibitive or disproportionate to the value of Nichols's property. Cater also contends that Nichols already has a reasonably adequate means of access to the western part of the property, by the road formerly used by Nichols's father. Cater asserts that this road is the shortest and nearest route to a public road. Cater also asserts that this road, even though it is in poor condition, can be repaired with minor expense and that Nichols presented no evidence of what it would cost to repair the road, and, thus, certainly no evidence to indicate that the cost of repair would be prohibitive. According to Cater, the trial court excluded that road as a means of access merely because it would be inconvenient for Nichols to repair it. "This [C]ourt has held that the physical convenience of both landowners is a material consideration in determining whether to condemn a right-of-way over a person's property." DeWitt, 598 So.2d at 852. However, this Court has also held that a right-of-way cannot be granted under § 18-3-1 "`as a matter of mere convenience or as a mere matter of saving expense[; instead,] [t]here must be real necessity before private property can be invaded by a citizen for private purposes.'" Southern Ry., 267 Ala. at 147,100 So.2d at 725 (quoting Roberts v. Prassenos, 219 Miss. 486, 69 So.2d 215
(1954)).
After examining the record, including the trial transcript, we agree with Cater that Nichols did not carry her burden of proving that the cost of building a bridge across Flat Creek, or of improving the old road formerly used by her father, would be prohibitive in proportion to the value of Nichols's property. Indeed, the record contains no evidence whatever indicating what it would cost to build a bridge or to improve the old road. Thus, Nichols did not satisfy her burden of proof under § 18-3-1 so as to entitle her to a right-of-way across Cater's property. Moreover, the trial court incorrectly applied the law to the facts of this case. The trial court incorrectly balanced the relative inconveniences and burdens to Cater and to Nichols in determining whether to grant Nichols an easement by necessity. Under Alabama law, in determining whether to grant Nichols an easement by necessity, the issue is not whether the right-of-way she seeks is, of the three possible routes, the nearest and most convenient means of access to her property. Nichols is required under §18-3-1 to show more than that "the burden which would be imposed upon [Cater] by an access easement in favor of [Nichols] is less than the burden which *Page 1122 
would be imposed upon [Nichols] by constructing and maintaining a bridge across Flat Creek." (Trial court's order, supra, at ___.) Instead, Nichols must show that for her to build a bridge across Flat Creek, or to repair the old road, would be cost-prohibitive, that is, that the expense of building a bridge, or repairing the old road, would be an unreasonable expense disproportionate to the value of her property. As we have stated, the record indicates that Nichols did not make this showing; thus, the trial court erred in rendering a judgment of condemnation granting Nichols a private easement. Therefore, we reverse the circuit court's judgment and remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
Hooper, C.J., and Maddox, Houston, Cook, Lyons, Brown, Johnstone, and England, JJ., concur.