[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 361 
William M. Key and Brandy D. Key ("the Keys") appeal from a judgment declaring a right-of-way across their land in favor of Donald E. Ellis, Gary Ellis, John Ellis, Glenn Ellis, and Sharon Ellis Laird ("the Ellises"), the owners of an adjoining tract of land. Because the circuit court did not err to reversal in declaring the right-of-way or in admitting certain testimony regarding the value of the taking, we affirm.
Sections 18-3-1 to 18-3-3, Ala. Code 1975, authorize the owner of a landlocked property to maintain a private condemnation action in order to obtain a right-of-way from the property to a nearby public road. Section 18-3-1 states:
 "The owner of any tract or body of land, no part of which tract or body of land is adjacent or contiguous to any public road or highway, shall have and may acquire a convenient right-of-way, not exceeding in width 30 feet, over the lands intervening and lying between such tract or body of land and the public road nearest or most convenient thereto provided written approval is obtained from the municipal government and the planning board of such municipality."[1]
Section 18-3-2 establishes limits on private condemnation actions under § 18-3-1:
 "In the establishment and condemnation of such right-of-way, no road or right-of-way shall be established through any person's yard, garden, orchard, stable lot, stable, gin house or curtilage without the consent of the owner; and the applicant must pay the owner for the value of the land taken and compensation for damage to the land, through which said right-of-way is established, resulting from the establishment of such road or right-of-way."
Section 18-3-3 provides that private condemnation actions under § 18-3-1 "shall be exercised by application to the probate court of the county in which the lands over which such right-of-way is desired, . . . and the same proceedings shall be had as in cases of condemnation of lands for public uses as provided by Chapter 1 [replaced by Chapter 1A] of this title."
The Ellises are the children of William and Mary Ellis. They inherited from their parents a 20-acre tract of land that the parties refer to as "Tract 14." In September 2003, the Ellises petitioned the probate court of Blount County for a right-of-way under § 18-3-1, alleging that Tract 14 was landlocked.[2]
They requested that the probate court grant a right-of-way across land owned by the Keys, which the parties refer to as "Tract 5," to the nearest public road.
The probate court took ore tenus testimony and viewed the land. In August 2004, it granted the right-of-way and appointed commissioners who subsequently *Page 363 
assessed $4,250 in damages for the taking. In September 2004, the probate court confirmed the assessment and ordered the right-of-way condemned upon the Ellises' payment of damages. The Keys appealed to the circuit court.
The circuit court reviewed the case de novo and held a bench trial at which it took ore tenus testimony. In the presence of the parties' counsel, the court viewed the proposed right-of-way across Tract 5 and the alternative rights-of-way suggested by the Keys. On June 23, 2006, the court entered a detailed order. The order described the testimony and the history of the lands in detail. After discussing the Keys' arguments, the court found that Tract 14 was landlocked and that the Ellises "presently have no unobstructed and unquestioned right of way to a public road." The court then declared a right-of-way across Tract 5 and ordered a jury trial as to the value of the taking. A jury assessed the value of the taking at $4,000, and on July 27, 2006, the circuit court entered a final judgment on the verdict.[3] The Keys filed a notice of appeal to this court on September 5, 2006. The case was transferred to the supreme court; it was subsequently transferred back to this court by the supreme court pursuant to § 12-2-7(6), Ala. Code 1975.
The record reveals the following relevant facts. In the late 1930s, Alvin and Bonnie Ellis acquired approximately 80 acres of land in Blount County. The boundary of the 80 acres is nearly rectangular in shape and is adjacent to Berry Mountain Loop Road on the southern and southeastern sides. The land is now divided into four rectangular tracts of approximately equal size. The county-tax-assessment map identifies the northwest tract as Tract 14, the northeast tract as Tract 13, the southwest tract as Tract 4, and the southeast tract as Tract 3. Only Tracts 4, 3, and the southeastern corner of Tract 13 are adjacent to Berry Mountain Loop Road. No part of Tract 14 is adjacent or contiguous to any public road or highway.
In 1951, Alvin and Bonnie Ellis conveyed Tract 13 to their son, Herman Ellis. In 1962, they conveyed Tract 3 to Herman and Tract 14 to their son and daughter-in-law, the plaintiffs' parents, William and Mary Ellis. Alvin and Bonnie retained ownership of Tract 4 until 1969, when, after Alvin's death, Bonnie conveyed it to another son, Easley Ellis. Tract 4 is now owned by Easley's widow, the plaintiffs' aunt, Earline Ellis.
There are no structures on Tract 14. John Ellis, one of the plaintiffs, testified that the Ellises use Tract 14 primarily as a hay field and, on occasion, to pasture cattle. The Ellises bale hay on Tract 14 approximately three to four times each year. They leave the hay on the field and retrieve the bales periodically throughout the winter months.
The Keys' land, Tract 5, is adjacent to the northern borders of Tracts 13 and 14. From 1937 until 2000, Tract 5 was owned by Coy Jones. In 1966, County Road 57 ("CR-57"), also known as Hendrix Road, was built along the northern border of Tract 5. Tract 5 lies between Tract 14 and CR-57. In 2000, after Jones had died, the Keys purchased Tract 5 from Jones's testamentary trust.
John Ellis testified that from 1962, when Alvin and Bonnie Ellis conveyed Tract 14 to William and Mary Ellis, until Alvin's *Page 364 
death in 1969, he accessed Tract 14 from the south across the western edge of Tract 4 with Alvin's permission. The circuit court made the following finding of fact regarding this route:
 "From viewing the premises, this route would intersect Berry Mountain Loop Road by way of the driveway of the owner of Tract 4, then staying to the left along the western boundary line of Tract 4 (as the driveway bears to the right) for a short distance along a utility access right of way . . ., then continuing straight north through the pasture along the west boundary line . . . to a gate that is located near the southwest corner of [Tract 14]. Although this route is certainly more level than the route proposed by the [Ellises], it is more than 1,300 feet in length."
The Ellises do not have any express easement or right-of-way across Tract 4. John Ellis testified that the current owner of Tract 4, his aunt Earline Ellis, has never given the Ellises permission to cross Tract 4 and has objected to their doing so. The testimony showed that a "no trespassing" sign has been placed at the entrance to Tract 4; however, the testimony conflicts regarding whether it was placed there by Earline or by the local utility board.
John Ellis testified that when CR-57 was built in 1966, Jones agreed to allow the Ellises access to Tract 14 from CR-57 across the western edge of Tract 5. The circuit court made the following findings regarding this route:
 "Although he has accessed Tract 14 through several different permissive routes, John Calvin Ellis testified that during Coy Jones's life his primary access to Tract 14 was from Highway 57 by going over Mr. Jones's property. [John] Ellis even sought to improve the convenience of this access by installing access gates at his own expense. [John] Ellis testified that he made an agreement with Coy Jones that he would buy and erect gates on Jones's property (one on Highway 57 and one on the fence line between Tract 14 and Tract 5) so that he could pass through the property to gain access to [Tract 14] but still maintain the integrity of Jones's pasture. The gates purchased and erected by Ellis are still in place. . . ."
In 2000 or 2001, after the Keys had purchased Tract 5, they locked the gates and would not allow the Ellises to cross Tract 5 in order to access Tract 14. John Ellis testified that he had been on Tract 14 only once during the years since the Keys had blocked the route over Tract 5. The Ellises subsequently filed their petition with the probate court asking it to declare a right-of-way to CR-57 across Tract 5. The circuit court made the following findings regarding the proposed right-of-way:
 "Highway 57 is the closest public road to [Tract 14]. The distance from the [northwest] corner of [Tract 14], across the Keys' property to Highway 57 is 385.55 feet. The [Ellises] seek a right of way 30 feet wide running north from [Tract 14's] northwest corner, across the Key property, running parallel to the west boundary line fence dividing the Keys' property from their neighbor to the west. . . . However, because the area along the west fence line of the Keys' property becomes low, wet and marshy as it nears Highway 57, the [Ellises], according to the testimony, want the western edge of the right of way to be located 30 feet east of the Keys' west fence line and to extend 30 feet wide from that point. In essence, this would mean that the Keys would give up not only the 30 feet for the right of way but they would have an additional 30 feet *Page 365 
west of the right of way that would be practically unsuitable for most uses."[4]
The proposed right-of-way across Tract 5 and the 30-foot area rendered unusable by it are together less than one-quarter of an acre in total size. The proposed right-of-way does not cross any "yard, garden, orchard, stable lot, stable, gin house or curtilage." See § 18-3-2, Ala. Code 1975. The testimony showed that the western part of Tract 5 over which the right-of-way lies is "raw farmland" and has been used to pasture cattle or keep hogs. The circuit court found that "[f]rom the court's observation of the land, the way the pasture of the Keys rolls downhill to the low area along their west fence line, it would be difficult for the Keys to even observe such a right of way from their house which is located . . . about 275 yards away."
Regarding the value of the taking, the jury heard testimony from John Ellis and Brandy Key, who testified as to the current and contemplated uses of Tract 5 and Tract 14. Brandy Key testified that she and her husband purchased Tract 5 for $89,900, approximately $4,000 per acre. She testified that had the right-of-way been in place at the time she purchased the property, she would have paid $75,000 for the land, a difference of $14,900. The Ellises attempted to submit testimony from John Ellis regarding the value of land he owned that was located across CR-57 from Tract 5. The circuit court sustained the Keys' objection to that testimony, but it later withdrew that ruling and allowed the testimony over the Keys' objection. John Ellis testified that he owned land across CR-57 from Tract 5 that was subservient to two easements. He stated that he believed this land was worth $4,000 per acre.
The Keys raise two issues on appeal. First, they argue that the circuit court erred in declaring the right-of-way. Under precedent from this court and our supreme court, the ore tenus rule applies to our review of judgments in private condemnation actions under § 18-3-1, Ala. Code 1975.
 "Under the ore tenus rule, a trial court's findings of fact are presumed correct and its judgment will be reversed only if plainly or palpably wrong or against the preponderance of the evidence. . . . The ore tenus rule is especially applicable in private condemnation cases under § 18-3-1. See Tate [v. Loper], 459 So.2d [892, 894 (Ala.Civ.App. 1984)]; see also Brothers [v. Holloway], 92 So.2d [845, 847-48 (Ala.Civ.App. 1997)] (`We note that our standard of review in condemnation cases is highly deferential.')."
Ex parte Cater, 772 So.2d 1117, 1119 (Ala. 2000). "Particularly in this case, where [the judge] had the advantage of viewing the premises and knowing the locale, the rule should be emphasized and we would be most reluctant to disturb his findings." Tenison v. Forehand, 281 Ala. 379, 381,202 So.2d 740, 742 (1967).
 "However, § 18-3-1 `"is not a favored statute,'" Southern Ry. v. Hall, 267 Ala. 143, 147, 100 So.2d 722, 725 (1957) (quoting State ex reL Carlson v. Superior Court, 107 Wash. 228, 232, 181 P. 689, 691 [(1919)]), and the ore tenus
presumption of correctness `does not apply where the trial court has incorrectly applied the law to [the] facts,' DeWitt [v. Stevens], 598 So.2d [849, 850 (Ala. 1992)]."
Ex parte Cater, 772 So.2d at 1119.
Section 18-3-1 gives owners of land that is not adjacent or contiguous to *Page 366 
any public road or highway the right to obtain a right-of-way to the nearest or most convenient public road. Our supreme court has held that "under § 18-3-1, a landowner is not entitled to condemn a right-of-way across a neighbor's intervening land if the landowner has an existing, reasonably adequate
means of access to his property, or if he could construct such access without prohibitive expense." Ex parte Cater,772 So.2d at 1121 (emphasis supplied); see also Southern Ry.Co. v. Hall, 267 Ala. 143, 100 So.2d 722 (1957). To determine whether a landowner has a reasonably adequate means of access, this court considers whether the access is unobstructed and unquestioned.[5] Section 18-3-1 does not authorize "the taking of lands of another as a mere matter of convenience," and "the burden is on the petitioner for a right of way to show that he has no reasonably adequate outlet." Southern Ry.Co., 267 Ala. at 147, 146, 100 So.2d at 725. Under §18-3-1 as applied by this court and our supreme court, therefore, we must determine whether the evidence demonstrated that the Ellises had an existing means of access to Tract 14 and whether that access was reasonably adequate.
The Keys argue that a reasonably adequate means of access to Tract 14 existed in the form of an easement by necessity across Tract 4. The rules governing the creation of an easement by necessity are distinct from those governing the private condemnation of a right-of-way under § 18-3-1. See,e.g., Kelly v. Panther Creek Plantation, 934 So.2d 1049,1054 (Ala. 2006). Easements by necessity are a form of implied easement. See Kelly, 934 So.2d at 1053-54; Burrowv. Miller, 340 So.2d 779, 780 (Ala. 1976); and Hamby v.Stepleton, 221 Ala. 536, 130 So. 76 (1930).
 "[T]wo elements are necessary for the finding of an easement of necessity. First, the properties in controversy must come from a common source. . . . Secondly, there must be a reasonable necessity for the creation of this easement; that is, it must be the only practical avenue of ingress and egress."
Burrow, 340 So.2d at 780 (citing Hamby,supra). Our supreme court examined the law related to easements by necessity in Hamby v. Stepleton, supra, stating:
 "`It is a universally established rule that where a tract of land is conveyed which is separated from the highway by other lands of the grantor, or which is surrounded by his lands or by his and those of third persons, there arises by implication in favor of a grantee a way of necessity across the premises of the grantor to the highway. The basis of this right is the presumption of a grant arising from the circumstances of the case. Necessity does not of itself create a right of way, but it is evidence of the grantor's intention to convey one, and raises an implication of a grant. The presumption, however, is one of fact, and whether or not the grant is to be implied in a given case depends upon the following terms of the deed and the facts in that case. . . . Since the [easement by necessity] is founded on a grant, it can arise only between grantor and grantee. No way of necessity can *Page 367 
be presumed or acquired over the land of a stranger. . . .' 9 R.C.L. § 31, Page 768; Walker v. Clifford, 128 Ala. 67, 29 So. 588, 86 Am. St. Rep. 74 [(1901)]; Greenwood v. West, 171 Ala. 463, 54 So. 694 [(1911)]; Trump v. McDonnell, 120 Ala. 200, 24 So. 353 [(1898)]."
Hamby, 221 Ala. at 537-38, 130 So. at 77 (emphasis supplied).
The Keys argue that the grant of Tract 14 from Alvin and Bonnie Ellis to William and Mary Ellis created a presumption of an easement by necessity over Tract 4 that the Ellises have not overcome. The Keys base their argument on the fact that both Tract 14 and Tract 4 were owned by Alvin and Bonnie Ellis; that Alvin and Bonnie retained Tract 4 when they conveyed Tract 14; that the conveyance landlocked Tract 14; and that Alvin allowed William and Mary and the Ellises to access Tract 14 across Tract 4 from 1962 until 1969.
Most cases involving easements by necessity arise when a landlocked grantee seeks a judicial grant or declaration of such an easement over the lands of the grantor who conveyed landlocked property. We have found only two cases in which defendants who were not the grantors of landlocked property attempted to use the law regarding easements by necessity defensively as the Keys do here.
In McGowin Investment Co. v. Johnstone,54 Ala.App. 194, 306 So.2d 286 (Civ. 1974), this court affirmed the trial court's judgment condemning a right-of-way in favor of the Johnstones across McGowin Investment Company's land under the then-existing version of § 18-3-1. The Johnstones' property was landlocked, but their grantor had retained land adjacent to it that had access to a public road via a perpetual easement.54 Ala.App. at 196, 306 So.2d at 287. McGowin argued that the Johnstones had "access from their land to a public road by means of implied way of necessity over the remaining land of their grantors and, therefore, should not be allowed access over the lands of a stranger." 54 Ala.App. at 196, 306 So.2d at 287. This court stated: "The issue to be determined is whether or not a reasonably adequate means of access exists. To this court, away by necessity is not necessarily equivalent to a reasonablyadequate means of access." 54 Ala.App. at 198,306 So.2d at 289 (emphasis added). Although circumstances existed under which the presumption of an easement by necessity could arise, this court concluded that, given the rugged physical makeup of the grantors' land, "there was ample evidence from which the trial court could determine that [the Johnstones] had no right of way over their grantor's remaining land which was unobstructed and unquestioned, or adequately reasonable." 54 Ala.App. at 198,306 So.2d at 289.
In Crabtrey v. Tew, 485 So.2d 726
(Ala.Civ.App. 1985), this court affirmed a circuit court's judgment in a case with facts nearly identical to those at issue here. In 1983, Lochie Tew "divided her property among her children. Each of the children, except James Tew, was conveyed parcels of land that fronted on a public road. . . ." 485 So.2d at 727. "The [James] Tew property [was] neither adjacent to nor contiguous to any public road or right-of-way. The Crabtrey property [lay] between the [James] Tew property and an unnamed paved county road. . . ." Id. 727. James Tew filed a petition for private condemnation seeking a right-of-way across the Crabtrey property to the county road. Id. at 727. The probate court and the circuit court both granted the right-of-way. Reviewing the case on appeal, this court considered a possible route across the land owned by James Tew's brothers, and stated: *Page 368 
 "In the present case, the route of access which Tew might have over his brothers' property could be cut off at any time, which made this route of access questionable and subject to being obstructed. Such a situation authorizes a proceeding by Tew to gain access to the nearest public road.
 "The Crabtreys contend that Tew should be given access over his brothers' land and should not be allowed access over the lands of a stranger, since both Tew's property and that of his brothers comes from a common grantor."
Id. at 728. Based on the language of § 18-3-1 and on McGowin, this court rejected the defendants' argument and found "that there was ample evidence to support the trial court's decision to grant the . . . right-of-way. . . ."Id.
As this court stated in McGowin, supra, a way by necessity is not necessarily equivalent to an existing, reasonably adequate means of access. McGowin,54 Ala.App. at 198, 306 So.2d at 289. First, as noted inHamby and as the Keys themselves recognize, the grant of a landlocked property creates a presumption of an easement by necessity. `"Necessity does not of itself create a right of way,'" but is merely evidence of the grantor's intent.Hamby, 221 Ala. at 537, 130 So. at 77. The presumption of an easement by necessity may be overcome. Id. Based on this language, we cannot say that the Ellises had an existing easement by necessity across Tract 4. Additionally, because most opinions of this court and our supreme court speak of easements by necessity as being "granted" or "declared" by the courts,[6] we agree with the circuit court's conclusion that the Ellises did not "already have an easement which was neither sought nor declared during the lifetime of the former owner." (Emphasis in original.)
Second, because the facts here created a presumption instead of an existing easement, the Ellises did not have a means of access over Tract 4 that was unquestioned so as to be reasonable access that would preclude the declaration of a right-of-way under § 18-3-1. Furthermore, in light of Earline Ellis's refusal to grant the Ellises permission to cross Tract 4, the access over Tract 4 is not unobstructed and unquestioned. The evidence did not show that Tract 4 provided the "permanency" and "unrestricted ability of usage" associated with reasonably adequate means of access. Starnes v. DiversifiedOperations, Inc., 47 Ala.App. 270, 272, 253 So.2d 330, 331
(Civ.1971).
Based on the foregoing, we cannot say that the circuit court erred in finding that Tract 14 was landlocked with no existing, reasonably adequate means of access. As this court did inMcGowin and Tew, supra, we affirm the circuit court's judgment declaring the right-of-way.
The Keys also argue on appeal that the circuit court erred in admitting John Ellis's testimony that the value of his nearby property, which was not at issue in the litigation, was $4,000 per acre. On appeal, the Keys argue only that the testimony was irrelevant and prejudicial. We review the circuit court's decision to admit or exclude evidence to determine whether the circuit court exceeded its discretion. Middleton v.Lightfoot, 885 So.2d 111, 114 (Ala. 2003).
 "The standard applicable to a review of a trial court's rulings on the admission of evidence is determined by two fundamental principles. The first grants trial judges wide discretion to exclude or to *Page 369 
admit evidence. `The test is that the evidence must . . . shed light on the main inquiry, and not withdraw attention from the main inquiry.' Atkins v. Lee, 603 So.2d 937 (Ala. 1992) (citing Ryan v. Acuff, 435 So.2d 1244 (Ala. 1983)). The second principle `is that a judgment cannot be reversed on appeal for an error unless . . . it should appear that the error complained of has probably injuriously affected substantial rights of the parties.' Atkins, 603 So.2d at 941."
Wal-Mart Stores, Inc. v. Thompson, 726 So.2d 651, 655
(Ala. 1998).
Section 18-1A-I92(a) provides that "[u]pon proper foundation, opinion evidence as to the value of property may be given in evidence only by [certain specified persons, including] an owner of the property. . . ." Section 18-1A-192(b) provides that §18-1A-192(a) "does not preclude the admissibility of other evidence explaining or enabling the trier of fact to understand and weigh any opinion testimony given under subsection (a)." "The rationale for allowing a nonexpert owner or his designated representative to testify regarding the value of his property, is that an owner presumably knows the value of his asset."E-Z Serve Convenience Store, Inc. v. State,686 So.2d 351, 353 (Ala.Civ.App. 1996). However, the "presumption of the owner's knowledge of value does not extend to one who would testify as to the value of another's property." Id.
Here, the ultimate issue before the jury was the value of the taking of the right-of-way across Tract 5. John Ellis, however, did not testify to his belief or opinion regarding the value of Tract 5 or the value of the taking. Instead, he testified that he believed the value of nearby property that he owned was worth $4,000 per acre, the same price that Brenda Key testified she paid for Tract 5 before the circuit court declared the right-of-way.
We cannot say that testimony regarding the value of nearby property does not shed light on the main inquiry or withdraws attention from it. Indeed, evidence regarding the value of nearby property would likely have explained or enabled the trier of fact to understand and weigh Brandy Key's opinion as to the value of her land. Furthermore, in light of Brenda Key's testimony that Tract 5 was worth $4,000 per acre before the taking, we cannot say that Ellis's testimony injuriously affected substantial rights of the Keys. Indeed, the jury awarded the Keys $4,000 in damages for a taking of less than one-quarter of an acre. This amounted to an effective award of $16,000 per acre taken. See Brothers v. Holloway,692 So.2d 845, 849 (Ala.Civ.App. 1997). Accordingly, the circuit court did not err to reversal in admitting the testimony over the Keys' objection.
Therefore, as to both issues the Keys raise on appeal, the circuit court's judgment is affirmed.
AFFIRMED.
PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.
[1] The Keys argue on appeal that the Ellises failed to obtain municipal approval for the right-of-way as required by § 18-3-1. However, the land at issue in this case is located in an unincorporated part of Blount County and does not fall within the jurisdiction of any municipality. Regardless, the record does not show that the Keys raised this argument below. Because we cannot consider arguments made for the first time on appeal, we will not address this issue. See Andrews v.Merritt Oil Co., 612 So.2d 409, 410 (Ala. 1992);Schiesz v. Schiesz, 941 So.2d 279, 290
(Ala.Civ.App. 2006).
[2] As a joint owner of Tract 14 with her children, Mary Ellis was also a party to the petition. Mary died while the litigation was pending, and the Ellises advised the circuit court that they had inherited her interest. There is no question on appeal as to the Ellises' title to Tract 14.
[3] The case action summary shows that the circuit court entered the judgment on July 25, 2006; however, the reporter's transcript shows that the jury trial occurred on July 27, 2006. Despite this discrepancy, the Keys filed their notice of appeal within 42 days of either date, as required by Rule 4, Ala. R.App.P.
[4] The circuit court noted that a shorter route to CR-57 existed across the adjoining property of an unrelated third party. However, due to the physical conditions of that land, the court found that route to be impracticable.
[5] See McGowin Inv. Co. v. Johnstone,54 Ala. App. 194, 197, 306 So.2d 286 (Civ. 1974) (quoting Starnes v.Diversified Operations, Inc., 47 Ala.App. 270, 272,253 So.2d 330, 332 (Civ.1971), quoting in turn Davenport v.Cash, 261 Ala. 380, 382, 74 So.2d 470, 471 (1950), adopting the language of Carter v. Barkley, 137 Iowa 510, 115 N.W. 21, 23 (1908)) ("`"The statute, in our judgment, should be construed to mean that, unless a party has a way, either public or private, which is unobstructed and unquestioned, he may institute proceedings under the statute."'").
[6] See, e.g., Gowan v. Crawford, 599 So.2d 619, 622
(Ala. 1992); Miller v. Harris, 945 So.2d 1072, 1074
(Ala.Civ.App. 2006); and Bluffs Owners Ass'n, Inc. v.Adams, 897 So.2d 375, 378 (Ala.Civ.App. 2004).