SMITH, Justice.
 

 The plaintiffs below, Alabama MBA, Inc., and Hugh W. Brown, Jr., appeal from a summary judgment in favor of the defendant, W.P. Media, Inc., in this action seeking damages for breach of contract. We reverse and remand.
 

 Facts and Procedural History
 

 In 2001, W.P. Media and Alabama MBA executed a contract (hereinafter “the operating agreement”) whereby the parties agreed to operate a joint venture named Alabaster Wireless MBA, LLC, a company intended to provide wireless Internet services to consumers. In the operating agreement, W.P. Media agreed to create a wireless network to be used by Alabaster Wireless and to provide certain technical support once the wireless network was created. Under the operating agreement, Alabama MBA was to contribute capital in the amount of $79,300 and W.P. Media was to contribute “proprietary technology” equal to the same amount. Brown signed the operating agreement on Alabama MBA’s behalf as its chairman of the board.
 

 In May 2005, Brown and Alabama MBA filed a complaint in the Jefferson Circuit Court alleging that, among other things, W.P. Media had breached the operating agreement by failing to construct a wireless network. Further, in a separate count, Brown alleged that in 2003 he had personally loaned W.P. Media $100,000 pursuant to a loan agreement and that W.P. Media had breached the loan agreement.
 

 In December 2005, Brown moved for a partial summary judgment on the breach-of-loan-agreement claim. The trial court entered a partial summary judgment for Brown on that claim and awarded damages. The trial court also certified its judgment as final under Rule 54(b), Ala. R. Civ. P. No appeal was taken from that judgment, and that judgment is not at issue in this appeal.
 

 In January 2007, W.P. Media moved for a summary judgment on the remaining claim that it had breached the operating agreement. Specifically, W.P. Media maintained that articles of incorporation for Alabama MBA were not filed until 2002, after the operating agreement had been executed. Thus, W.P. Media contended, the operating agreement was void because Alabama MBA lacked capacity to enter into the contract. Additionally, W.P. Media contended that Alabama MBA, as an allegedly improperly incorporated entity, was not a real party in interest and was thus due to be dismissed from the case.
 

 The trial court denied W.P. Media’s summary-judgment motion. W.P. Media subsequently filed a motion for the trial court to “reconsider” the denial of the motion, a motion to compel arbitration, and a motion for a change of venue. After
 
 *1169
 
 a hearing, the trial court issued an order setting aside its previous order denying W.P. Media’s motion for a summary judgment, entered a summary judgment for W.P. Media on the breach-of-contract claim, and held that the motions to compel arbitration and for a change of venue were moot. Brown and Alabama MBA appeal.
 

 Standard of Revieiv
 

 “ ‘This Court’s review of a summary judgment is de novo.
 
 Williams v. State Farm Mut. Auto. Ins. Co.,
 
 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.;
 
 Blue Cross & Blue Shield of Alabama v. Hodurski,
 
 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant.
 
 Wilson v. Brown,
 
 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce “substantial evidence” as to the existence of a genuine issue of material fact.
 
 Bass v. South-Trust Bank of Baldwin County,
 
 538 So.2d 794, 797-98 (Ala.1989); Ala.Code 1975, § 12-21-12. “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.”
 
 West v. Founders Life Assur. Co. of Fla.,
 
 547 So.2d 870, 871 (Ala.1989).’ ”
 

 Prince v. Poole,
 
 935 So.2d 431, 442 (Ala.2006) (quoting
 
 Dow v. Alabama Democratic Party,
 
 897 So.2d 1035, 1038-39 (Ala.2004)).
 

 Discussion
 

 The issue in this case is whether Alabama MBA was properly incorporated both at the time the operating agreement was executed and at the time Alabama MBA and Brown filed the underlying action.
 

 It is undisputed that, at the time the operating agreement was executed, the articles of incorporation for Alabama MBA had not been filed. However, Brown filed articles of incorporation for Alabama MBA in the Jefferson County Probate Court in October 2002, and the secretary of state’s records indicate that Alabama MBA was incorporated at that time. The record reveals that Alabama MBA did not hold an organizational meeting, pay taxes, issue stock, or adopt bylaws until early 2007. Further, before then Alabama MBA had no bank accounts or employees; all Alabama MBA’s expenses were paid by Brown personally.
 

 In its summaxy-judgment motion, W.P. Media argued that because Alabama MBA was not incorporated at the time the operating agreement was executed, it lacked capacity to contract. Thus, W.P. Media maintained, the contract was “void ab ini-tio” and no action for its breach could be maintained.
 
 [1]
 

 Corporate existence begins when articles of incorporation are filed, unless a later effective date is specified in the arti-
 
 *1170
 
 cíes. Alabama Code 1975, § 10-2B-2.03, states:
 

 “(a) Unless a delayed effective date is specified, the
 
 corporate existence begins when the articles of incorporation are filed.
 

 “(b) The probate judge’s filing of the articles of incorporation is
 
 conclusive proof
 
 that the incorporators satisfied all conditions precedent to incorporation except in a proceeding by the state to cancel or revoke the incorporation or involuntarily dissolve the corporation.”
 

 (Emphasis added.)
 

 There is no dispute in the record that the articles of incorporation for Alabama MBA were filed in 2002, after the operating agreement had been executed. Even so, Alabama MBA contends that it existed as a “de facto corporation” at the time the operating agreement was executed.
 

 “[A]n improperly formed corporation can nevertheless exist as a de facto corporation. ‘A de facto corporation ... can be brought into being when it can be shown that a bona fide and colorable attempt has been made to create a corporation, even though the efforts at incorporation can be shown to be irregular, informal, or even defective.’
 
 Harris v. Stephens Wholesale Bldg. Supply Co.,
 
 54 Ala.App. 405, 408, 309 So.2d 115, 117 (1975).”
 

 Eagerton v. Second Econ. Dev. Coop. Dist. of Lowndes County,
 
 909 So.2d 783, 789 (Ala.2005). In contrast, a “de jure corporation” is “[a] corporation formed in accordance with all applicable laws and recognized as a corporation for liability purposes.”
 
 Black’s Law Dictionary
 
 366 (8th ed.2004). It appears undisputed that Alabama MBA was not a de jure corporation at the time the operating agreement was executed.
 

 Alabama MBA contends that it existed as a de facto corporation at the time the operating agreement was executed; the record, however, reveals no substantial evidence of “bona fide and colorable” attempts to incorporate Alabama MBA occurring before the execution of the operating agreement. Therefore, we hold that Alabama MBA did not exist as a de facto corporation at the time the operating agreement was executed.
 

 Although Alabama MBA might not have existed as either a de jure corporation or a de facto corporation, Alabama MBA contends that W.P. Media is nevertheless es-topped from denying Alabama MBA’s corporate existence. We agree.
 

 “Corporate action may also be established under principles of estoppel, whether or not an entity or organization qualifies as a de facto corporation. The doctrine is based on conduct by a party which recognizes an organization as a corporation or an express or implied representation by a corporation that it is a corporation. In the first instance, es-toppel cannot apply to one who has not dealt with the organization or in any way recognized it as having corporate existence, or who has participated in holding it out as a corporation. In the second instance, where a party has contracted or otherwise dealt with an organization, believing it to be a corporation, there may have been no holding out of corporate status by the organization. In either instance, estoppel arises from the contract or course of dealing by the parties and is applicable in a suit by the party dealing with the organization, as well as in a suit by the organization.”
 

 Richard A. Thigpen,
 
 Alabama Corporation Law
 
 § 3:59 (3d ed.2003) (footnotes omitted).
 

 Alabama MBA, citing
 
 City of Orange Beach v. Perdido Pass Developers, Inc.,
 
 631 So.2d 850 (Ala.1993), and
 
 Bukacek v. Pell City Farms, Inc.,
 
 286 Ala. 141, 237
 
 *1171
 
 So.2d 851 (1970), argues that because W.P. Media treated Alabama MBA as a corporation, W.P. Media is now estopped from denying Alabama MBA’s corporate existence. In
 
 City of Orange Beach v. Perdido Pass Developers, Inc.,
 
 the City of Orange Beach refused to approve zoning for an island owned by Perdido Pass Developers, Inc., even though Orange Beach had entered a contract with the previous owner of the island to approve certain zoning ordinances that would allow the island to be developed. Perdido Pass and others sued Orange Beach, alleging breach of contract. On appeal, Orange Beach argued that Perdido Pass did not obtain title to the island because it was not incorporated at the time the previous owner conveyed the property and, therefore, it did not have standing to sue. We stated:
 

 “These arguments are also without merit. ... Although Perdido Pass’s articles of incorporation were filed before the signing of the deed, the evidence shows that Perdido Pass was treated as a corporation by all parties, including Orange Beach. Orange Beach received various applications from Perdido Pass, issued receipts to Perdido Pass for various payments, and issued a septic tank license to Perdido Pass for the island. We will not allow Orange Beach to deny Perdido Pass’s existence as a corporation after having dealt with it as a corporation. See
 
 Bukacek v. Pell City Farms, Inc.,
 
 286 Ala. 141, 237 So.2d 851 (1970);
 
 City of Greenville v. Greenville Water Works Co.,
 
 125 Ala. 625, 27 So. 764 (1900).”
 

 631 So.2d at 854.
 

 In
 
 Bukacek v. Pell City Farms, Inc.,
 
 Bukacek entered into an agreement with others to form Pell City Farms, Inc., and he conveyed a 300-acre tract to the corporation. Subsequently, Bukacek filed an action to quiet title, alleging that Pell City Farms, Inc., was incapable of taking legal title because no articles of incorporation had been filed and it was neither a de jure nor a de facto corporation. This Court held:
 

 “[W]e think the fact situation here presented shows that while Pell City Farms, Inc., may not have been a corporation de jure — or perhaps even de fac-to — insofar as the transaction here is concerned, it should be regarded practically as a corporation, being recognized as such by the parties themselves. In other words,
 
 the incidents of corporate existence may exist as between the parties by virtue of an estoppel.
 
 Thus, besides corporations de jure and de fac-to, there can be a recognition of a third class known as ‘Corporations by estop-pel.’ ”
 

 Bukacek,
 
 286 Ala. at 145, 237 So.2d at 853 (emphasis added).
 

 W.P. Media entered into a contractual relationship with Alabama MBA to operate Alabaster Wireless. The operating agreement identified Alabama MBA as a corporation, was executed in Alabama MBA’s corporate name, and was signed by Brown as Alabama MBA’s “chairman of the board.” W.P. Media further concedes in its brief that Alabama MBA and Brown had essentially “represented” that Alabama MBA was “a viable, legal corporation” and that W.P. Media had “no reason to doubt” those representations. Appel-lee’s brief, at 25. Although Alabama MBA had not yet filed articles of incorporation at the time the operating agreement was executed in 2001, the articles of incorporation were subsequently filed in 2002. The record reveals that at no time during the venture did W.P. Media challenge the validity of the operating agreement until after it was sued for breaching the operating agreement. Under the facts of this case, we hold that W.P. Media’s actions of entering into a contract with Alabama MBA and participating with Alabama MBA in the joint venture before and after Alabama MBA’s articles of incorporation
 
 *1172
 
 were filed estop W.P. Media from denying Alabama MBA’s corporate existence for purposes of challenging the validity of the operating agreement.
 
 City of Orange Beach, supra; Bukacek, supra.
 

 [2]
 

 WP Media also contends that Alabama MBA was not properly incorporated at the time it filed the instant action; thus, it argues, Alabama MBA was not a “real party in interest” under Rule 17, Ala. R. Civ. P., and cannot maintain this action. In support of its contention that Alabama MBA was not incorporated when the underlying action was filed, W.P. Media argues that Brown “chose not to form the corporation and [instead] treat[ed] everything personal” and that, in addition to filing articles of incorporation, Alabama MBA was
 
 also
 
 required to meet the prerequisites of Ala.Code 1975, § 10-2B-2.05(a). That Code section provides:
 

 “After incorporation the initial directors shall hold an organizational meeting, at the call of a majority of the directors, to complete the organization of the corporation by appointing officers, adopting bylaws (unless the power to adopt initial bylaws has been reserved to the shareholders in the articles of incorporation), and carrying on any other business brought before the meeting.”
 

 W.P. Media asserts, and the record supports its assertion, that Alabama MBA held no “organizational meeting” until after it and Brown filed the underlying action. W.P. Media also asserts that Alabama MBA failed to meet the record-keeping requirements of Ala.Code 1975, § 10-2B-16.01. W.P. Media argues that Alabama MBA was improperly incorporated because it failed to comply with these two Code sections after it had filed its articles of incorporation.
 

 As started above, the plain language of § 10-2B-2.03 explicitly states that the probate judge’s filing of the articles of incorporation is
 
 “conclusive proof
 
 that the incorporators satisfied all conditions precedent to incorporation.” (Emphasis added.) Although § 10-2B-2.05 sets forth procedures to “complete the
 
 organization
 
 of the corporation” (emphasis added), that Code section explicitly states that this occurs “[a]fter incorporation.” Moreover, nothing in the language of § 10-2B-16.01 requires records to be kept as a prerequisite of proper incorporation — in fact, § 10-2B-16.01 only prescribes duties of existent corporations.
 

 As stated above, it is undisputed that Brown complied with § 10-2B-2.03 and that articles of incorporation for Alabama MBA were filed in 2002, years before the underlying action was initiated. Therefore, there is no merit in W.P. Media’s argument that Alabama MBA was not properly incorporated at the time this action was filed and thus cannot be a real party in interest in this case.
 

 Conclusion
 

 Alabama MBA has demonstrated that W.P. Media is estopped from denying Alabama MBA’s corporate existence. Therefore, the summary judgment is reversed, and the case is remanded for further proceedings.
 

 REVERSED AND REMANDED.
 

 COBB, C.J., and WOODALL, PARKER, and SHAW, JJ., concur.
 

 [1]
 

 . No authority is cited either below or on appeal for the proposition that an improperly formed or putative corporation lacks capacity to enter into a contract, and thus that question is not before this Court.
 

 [2]
 

 . Alabama MBA also argues that in 2007 it ratified the operating agreement. See
 
 Petroff v. Arbona,
 
 336 So.2d 178, 181 (Ala.1976) (noting that "under proper circumstances a corporation may after its organization adopt or ratify the contracts of its promoters"). However, our holding pretermits discussion of that issue.