Rel: June 14, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

_____

### SC-2023-0134
_____

### Stacy G. Coats and Kendall Coats

### v.

### Sandra F. Ayers, Tommy J. Ayers, and J. Jason Ayers

### Appeal from Tuscaloosa Circuit Court
### (CV-16-75)

SHAW, Justice.

Stacy G. Coats and her husband Kendall Coats, the plaintiffs in this

private right-of-way condemnation case, appeal from a summary

judgment in favor of the defendants, Sandra F. Ayers, Tommy J. Ayers, and J. Jason Ayers. We reverse and remand.

Facts and Procedural History

The Ayerses own several adjoining parcels of real property (collectively referred to as "the Ayers property") that, together, are generally bordered to the west by Old Moores Bridge Road and to the east by a parcel of land that was once owned by Billy Guin, Stacy's father, and is now owned by Stacy. Jason resides on the Ayers property, part of which is also leased to others as farmland. A private, dirt "farm road" crosses the middle of the Ayers property from Old Moores Bridge Road on the property's western boundary to the property's eastern boundary. That road is used by the Ayerses and their lessees to access portions of the Ayers property.

Stacy's property that lies to the east of the Ayers property ("the section 15 property") is a large, 543-acre parcel of land. It stretches from the Ayers property on its western border east to New River Road, which runs along a portion of the section 15 property's northeastern border. The section 15 property is bisected from north to south by a meandering stretch of the Sipsey River. The section 15 property is low-lying wetland

2

that is often flooded. It is used for hunting and fishing and is unsuitable for any other use.

A third parcel of land that is approximately 160 acres ("the section 10 property") lies to the north of, but does not border, both the Ayers property and the section 15 property. The section 10 property was once owned by James Prewitt, Stacy's uncle, and is currently owned by Stacy. It is also low-lying wetland that is often flooded and is used for hunting and fishing.

The property between the section 10 property and the Ayers property and the section 15 property, which various maps in the record indicate is owned by "T.H. Robertson & Sons, Inc.," is an intervening fourth parcel of land ("the Robertson property").

In the late 1980s, when Guin owned the section 15 property and Prewitt owned the section 10 property, the two were given permission to use the farm road to access the western portion of the section 15 property, where Guin kept a boat. Both were given keys to a gate on the farm road, and certain conditions were imposed, such as prescribing when the farm road could be used during hunting season and directing that others would not be allowed to use it unaccompanied by Guin or Prewitt. It appears

from the record that Prewitt used the farm road to access the section 15 property and then crossed from it over the Robertson property on foot or by boat to access the section 10 property.

In 2011, Prewitt transferred the section 10 property to Stacy, and she began using the farm road to access the western portion of the section 15 property and, in turn, the section 10 property to the north. In 2014, she used the farm road with two friends to go hunt on the section 10 property. She was confronted by Jason and Tommy, who indicated that she did not have permission to use the farm road. Stacy apparently believed that, because she owned the section 10 property, she could use the farm road as Prewitt had, and she had been doing so since 2011.

In 2015, Guin transferred to Stacy an 80-acre portion of the section 15 property ("the 80-acre portion"). The 80-acre portion, on the western edge of the section 15 property, borders the eastern boundary of the Ayers property, including where the farm road on the Ayers property meets the section 15 property. The 80-acre portion lies to the west of the Sipsey River.

The Coatses filed in the Tuscaloosa Probate Court an "Application for Condemnation of Right-of-Way and Request for Injunctive Relief"

4

pursuant to § 18-3-1, Ala. Code 1975.[1]  That application sought a right-of-way across the Ayers property to provide access to the "nearest public road," that is, Old Moores Bridge Road.

The probate court ultimately concluded that the Coatses had established that Stacy's property was landlocked and granted them "a convenient right-of-way not exceeding thirty feet in width, over [the Ayers] property from Old Moores Bridge Road."  The probate court's order appointed a local surveying company to suggest a location for, and to survey, a right-of-way, and the surveying company concluded that "the only logical means" of accessing Stacy's property was the farm road.  The probate court subsequently entered an order granting the Coatses the right of reasonable and lawful use of the described right-of-way over the farm road.

The Ayerses timely appealed the probate court's judgment to the Tuscaloosa Circuit Court.  Following discovery, the Ayerses filed a motion for a summary judgment in their favor on the ground that Stacy's property "is no longer landlocked."  Focusing on the 80-acre portion, the

_____

[1]It is unclear why Kendall Coats was named as a plaintiff; he does not appear to own any of the properties at issue in this case.

motion alleged that, as the result of Guin's death on May 1, 2022, Stacy had inherited or was due to inherit the remaining section 15 property. As a result, the Ayerses argued, the 80-acre portion "merged" with the remaining section 15 property from which it had previously been carved out, resulting in Stacy's ownership of "one singular plot of land" that touches New River Road. Thus, according to the Ayerses, the right-of-way previously requested by the Coatses was, as a result of the above-described events, no longer a necessity because the 80-acre portion was "no longer landlocked."

The Ayerses specifically relied on, among other evidence, Stacy's deposition testimony, in which she confirmed both Guin's recent death and the contents of his will, pursuant to which, as his only heir, she stood to inherit his entire estate, which included the remaining section 15 property. She also conceded that the inherited property abutted New River Road. She denied, however, that she had "complete access" to the 80-acre portion and to the section 10 property because, she said, to get to them from New River Road, she would have to cross the Sipsey River. Stacy further indicated that the 80-acre portion is the driest portion of the section 15 property, explaining that it is not underwater "all through

the year." Stacy also reiterated in her deposition testimony that the section 10 property was landlocked and confirmed that, despite the fact that the section 10 property is neither adjacent nor contiguous to the Ayers property, she had previously used the farm road to reach it, presumably from the section 15 property. When asked about the Robertson property, which she would also have to cross to access the section 10 property, Stacy answered as follows: "Well, … that property is owned by the bank but we've … got verbal permission from them to cross that."

The Ayerses further submitted the deposition testimony of Guin, taken before his death. Guin explained that he had given the 80-acre portion to Stacy, in part because she otherwise had no access to the section 10 property and because, he said, she needed a place to park vehicles "because she can't carry a vehicle to her land." He described the 80-acre portion as the driest portion of his original 543-acre parcel and noted that he also had chosen it because it "was the closest" to the farm road across the Ayers property. His testimony also suggested that, because of flooding, a boat is often necessary to access the section 15 property from New River Road.

In opposition to the Ayerses' summary-judgment motion, the Coatses relied on the deposition testimony of Stacy and Guin regarding the swampy topography of the section 15 property and the fact that the section 10 property remained landlocked. More specifically, they argued: "It is undisputed that the Sipsey River runs down the middle of [the section 15 property], thus creating a 'landlocked' portion to the west of the Sipsey River." Thus, the Coatses maintained that, although a portion of the section 15 property "touches a public roadway, there is no reasonably adequate means to access the western portion of the property" across the Sipsey River or to access the section 10 property. As to the Robertson property, Stacy's affidavit indicated that she had "never been denied permission to cross this property to access the [section 10] property."

The Coatses also provided affidavit testimony from Keith Andrews, the owner of a "construction company that specializes in building highways, bridges and civil infrastructure." According to Andrews, the construction of a road and an elevated bridge across the Sipsey River to allow the western portion of the section 15 property to be accessed from the eastern portion "would not be feasible" because of the extensive

permitting process and that "the cost of construction, if ever permitted, would vastly exceed the value of the property." He estimated a total project cost of "at least two to five million dollars, depending on the materials to be used, to construct a bridge over the Sipsey River on [the section 15 property] and to construct access to the bridge."

During the ensuing hearing on the Ayerses' summary-judgment motion, the Coatses' counsel identified both the section 10 property and the 80-acre portion as the properties to which they sought access. Counsel further noted that the section 10 property was still "landlocked." The Ayerses, on the other hand, pointed out that the section 10 property was not contiguous to their property and that there was no access to it from the farm road: "So [Stacy is] not gaining access to the [section 10 property by way of the farm road] if a condemnation [is] allowed." Further, they argued that, because Stacy, owing to Guin's death, now owns the entire section 15 property, including the 80-acre portion, she has access to the section 15 property from New River Road.

Subsequently, the circuit court entered a judgment granting the Ayerses' summary-judgment motion. That judgment states, in pertinent part:

9

"In <u>Southern Railway Company v. Hall</u>, [267 Ala. 143,] 100 So. 2d 722 (Ala. 1958), the Alabama Supreme Court explained [the predecessor to § 18-3-1, Ala. Code 1975] as follows:

"'The obvious purpose of the statute is to provide a means whereby a landowner, enclosed on all sides by lands of others and <u>unable to get to his land from a public road or highway</u>, can get relief by condemning a right of way to it across intervening land. However, if such landowner already has a reasonably adequate way to and from his land, there is no field of operation for the statute. … If an existing access is reasonably adequate for the purpose of giving the landowner an outlet to a public road or highway, there is no basis under the statute for condemning another outlet across the intervening land. …

"'….

"'"… The statute does not contemplate granting one citizen or corporation a right of way through the property of another citizen or corporation as a matter of mere convenience or as a mere matter of saving expense. … The right to the control and use of one's property is a sacred right, not to be lightly invaded or disturbed. When property may be taken from a citizen for any purpose by law, the method for so doing must be strictly pursued, and the party seeking to take the property of another must

10

come squarely within the statute."'

"[267 Ala. at 146-47,] 100 So. 2d at 724, 725 [(quoting Roberts v. Prassenos, 219 Miss. 486, 69 So. 2d 215, 216, 217 (1954))] (emphasis added).

"Here, the death of Mr. Guin and [Stacy's] inheritance of the remaining 463 acres [of the section 15 property] provided [the Coatses] with access. The evidence is undisputed that [the inherited] property connects to New River Road. ... New River Road ... gives them reasonable access to their property. The fact that the [Coatses] are limited on how deep they can go into their property before coming to swampy land, or the Sipsey River, is a separate issue from their ability to access the property from a public road.

"As stated by the Alabama Supreme Court, 'the party seeking to take the property of another must come squarely within [§ 18-3-1, Ala. Code].' The [Coatses] here do not come squarely within the statute. Accordingly, the court determines from the undisputed evidence that the [Ayerses'] motion is due to be and [is] hereby GRANTED, and that judgment is entered in favor of [the Ayerses]."

(Capitalization and emphasis in original.)

The Coatses subsequently filed a postjudgment motion in which they contended that a factual dispute remained as to the reasonableness of their available access to both the section 10 property and the 80-acre portion. They further argued that the circuit court's judgment failed to address the section 10 property, which their predecessors in interest had

11

historically accessed by first using the farm road to access the section 15 property. Following the denial of their postjudgment motion, the Coatses appealed.

Standard of Review

      "'"This Court's review of a summary judgment is de novo. <u>Williams v. State Farm Mut. Auto. Ins. Co.</u>, 886 So. 2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; <u>Blue Cross & Blue Shield of Alabama v. Hodurski</u>, 899 So. 2d 949, 952-53 (Ala. 2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. <u>Wilson v. Brown</u>, 496 So. 2d 756, 758 (Ala. 1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce 'substantial evidence' as to the existence of a genuine issue of material fact. <u>Bass v. SouthTrust Bank of Baldwin County</u>, 538 So. 2d 794, 797-98 (Ala. 1989); Ala. Code 1975, § 12-21-12. '[S]ubstantial evidence is evidence of such weight and quality that fair minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' <u>West v. Founders Life Assur. Co. of Fla.</u>, 547 So. 2d 870, 871 (Ala. 1989)."'

"Prince v. Poole, 935 So. 2d 431, 442 (Ala. 2006) (quoting Dow v. Alabama Democratic Party, 897 So. 2d 1035, 1038-39 (Ala. 2004))."

Brown v. W.P. Media, Inc., 17 So. 3d 1167, 1169 (Ala. 2009).

## Discussion

### I.

On appeal, the Coatses contend that genuine issues of material fact exist as to whether they are entitled to a right-of-way under § 18-3-1, thus precluding summary judgment. Section 18-3-1 provides, in pertinent part:

> "The owner of any tract or body of land, no part of which tract or body of land is adjacent or contiguous to any public road or highway, shall have and may acquire a convenient right-of-way … over the lands intervening and lying between such tract or body of land and the public road nearest or most convenient thereto …."

(Emphasis added.)

> "Section 18-3-1 gives owners of land that is not adjacent or contiguous to any public road or highway the right to obtain a right-of-way to the nearest or most convenient public road. Our supreme court has held that 'under § 18-3-1, a landowner is not entitled to condemn a right-of-way across a neighbor's intervening land if the landowner has an existing, reasonably adequate means of access to his property, or if he could construct such access without prohibitive expense.' Ex parte Cater, 772 So. 2d [1117] at 1121 [(Ala. 2000)] (emphasis

13

supplied); see also Southern Ry. Co. v. Hall, 267 Ala. 143, 100 So. 2d 722 (1957). To determine whether a landowner has a reasonably adequate means of access, this court considers whether the access is unobstructed and unquestioned. Section 18-3-1 does not authorize 'the taking of lands of another as a mere matter of convenience,' and 'the burden is on the petitioner for a right of way to show that he has no reasonably adequate outlet.' Southern Ry. Co., 267 Ala. at 147, 146, 100 So. 2d at 725."

Key v. Ellis, 973 So. 2d 359, 365-66 (Ala. Civ. App. 2007) (footnote omitted). When an owner's property is not adjacent to a public road or highway, which is often referred to as the property being "landlocked," § 18-3-1 allows the property owner to seek a right-of-way over the intervening lands of another if there exists no other reasonably adequate means of access to the property or if such access could not otherwise be constructed without prohibitive expense.

There appear to be two theories to the Coatses' claim below; they assert that they are entitled to a right-of-way over the farm road either (1) to access the section 15 property or (2) to access the section 10 property. We address each theory in turn.

## II.

On appeal, the Coatses first contend that the portion of the section 15 property lying west of the Sipsey River, including the 80-acre portion,

14

is "landlocked" or otherwise has no access to a public road.

The primary issue is whether the section 15 property, including the 80-acre portion, constitutes a single "tract or body of land." If so, then a part of it "is adjacent or contiguous to [a] public road or highway," namely New River Road on its eastern border, and, thus, under the plain language of § 18-3-1, the Coatses cannot seek a right-of-way under that Code section. The Ayerses argued, and the circuit court essentially held, that the 80-acre portion and the remaining section 15 property "merged" into a single tract or body of land when Stacy became the owner of both, and that single tract or body of land is adjacent or contiguous to a public road. On appeal, the Coatses do not argue that the 80-acre portion and the remaining section 15 property were not "merged." Instead, they contend that, because of the swampy nature of the property and the fact that it is bisected by the Sipsey River, not all of the section 15 property can be accessed from New River Road. Thus, they assert, they have no reasonable means to access the western portion of the section 15 property and the acquisition of a right-of-way under § 18-3-1 over the Ayers property is, therefore, appropriate in these circumstances.

In support of their position, the Coatses cite this Court's decision in

15

Ex parte Cater, 772 So. 2d 1117 (Ala. 2000). In Cater, the plaintiff, Etoile Nichols, owned a 191-acre parcel of property that was bisected by a creek. No portion of Nichols's property abutted a public road. 772 So. 2d at 1118. The portion to the east of the creek was accessible from a public road by a private road. Nichols claimed that the portion to the west of the creek was "landlocked." It, however, could be accessed by a private gravel road that ran west from that portion of Nichols's property, across the property of a third party, and then across the property of the defendant, Lula Dell Cater, to a public road. Further, the western portion of Nichols's property was once accessed by another private road that ran south to Highway 21. That second private road was in disrepair and impassible during the winter. 772 So. 2d at 1118. Nichols commenced an action under § 18-3-1, seeking a right-of-way over the private gravel road across Cater's property so that she could access the western portion of her property.

The trial court found that the right-of-way that Nichols sought was the "'nearest and most convenient means of access to her'" property. 772 So. 2d at 1119. Other means of access to the western portion of her property would require the construction of roadbeds and would not be

16

readily suitable for use in the winter; further, accessing the western portion of her property from the eastern portion would require the construction of a bridge over the creek. Therefore, the trial court concluded that the burden that would be imposed on Cater by creating a right-of-way over the private gravel road on her property was less than the burden that would be imposed on Nichols by constructing and using another means of access. 772 So. 2d at 1119.

On appeal, Cater argued that the trial court had erred in granting Nichols a right-of-way when she had two other "reasonably adequate means of access," namely, building a bridge over the creek or repairing the other private road to Highway 21. In support, she cited this Court's decision in Southern Railway Co. v. Hall, 267 Ala. 143, 100 So. 2d 722 (1958). This Court quoted extensively from Southern Railway, including the following passage:

> "'The obvious purpose of the statute is to provide a means whereby a landowner, underlined on all sides by lands of others and unable to get to his land from a public road or highway, can get relief by condemning a right of way to it across intervening land. However, if such landowner already has a reasonably adequate way to and from his land, there is no field of operation for the statute. … If an existing access is reasonably adequate for the purpose of giving the landowner an outlet to a public road or highway, there is no basis under

17

the statute for condemning another outlet across the intervening land. … We do not think the purpose of the statute was to do more than to assure that land which is not adjacent or contiguous to a public road or highway can be reached from such a road or highway.'"

Cater, 772 So. 2d at 1120 (quoting Southern Ry., 267 Ala. at 146, 100 So. 2d at 724-25) (emphasis added). In addressing this language, the Court in Cater stated: "[U]nder § 18-3-1, a landowner is not entitled to condemn a right-of-way across a neighbor's intervening land if the landowner has an existing, reasonably adequate means of access to his property, or if he could construct such access without prohibitive expense." 772 So. 2d at 1121. The Court ultimately held that, because Nichols had not demonstrated that building a bridge over the creek or improving and using the private road to Highway 21 "would be prohibitive," Nichols had not established that she was entitled to a right-of-way over Cater's property under § 18-3-1. Id. Therefore, the trial court's decision was reversed.

In this case, the Coatses argue that the western portion of the section 15 property, including the 80-acre portion, is "landlocked" like the property at issue in Cater and that there is a genuine issue of material fact, thus precluding summary judgment, regarding whether there is an

existing, reasonably adequate means to access that property other than the proposed right-of-way over the farm road. The Coatses argue that, unlike Nichols in <u>Cater</u>, who did not demonstrate that building a bridge or improving and using the alternative private road would be prohibitive, they have submitted substantial evidence creating a genuine issue of material fact regarding whether constructing a bridge over the Sipsey River is a feasible means to access the western portion of the section 15 property.

In <u>Cater</u>, it was undisputed that the property at issue was "landlocked" and not adjacent to any public road. 772 So. 2d at 1118. In addressing whether Nichols had an "existing, reasonably adequate means of access to [her] property," <u>id.</u> at 1121, the Court was not applying a test to determine whether the property was "landlocked" or was not "adjacent or contiguous to any public road or highway," which is the prerequisite to the application of § 18-3-1. Instead, the Court relied on that language in determining whether Nichols, the owner of landlocked property, had another means to access her property without the need to

acquire a right-of-way in the first place.[2] The plain language of § 18-3-1 does not allow landowners to seek a right-of-way over the property of another simply because they have no reasonable, adequate means to access parts of their property; instead, one may seek to acquire a right-of-way when "no part" of their "tract or body of land is adjacent or contiguous to any public road or highway." In this case, the section 15 property, which, without dispute, includes the "merged" 80-acre portion, is adjacent to New River Road, which is a public road.[3]

The Coatses argue that, in <u>Cater</u>, the western portion of Nichols's property was allegedly "landlocked" because it was separated from the eastern portion of her property by a creek. This Court, however, did not address whether this fact meant that, for purposes of § 18-3-1, either portion of Nichols's property was disconnected from property that was "adjacent or contiguous to any public road or highway." Instead, <u>none</u> of

---

[2]The same was true in <u>Southern Railway</u>, supra, and <u>Key</u>, supra; the plaintiffs in those cases each sought a right-of-way to access land that undisputedly was not adjacent to a public road.

[3]The result might be different if a parcel of land, because of its physical features, may be deemed a separate "tract" or "body" as those terms are used in § 18-3-1. However, there is no argument on appeal as to the meaning of those terms. Therefore, we do not address that issue.

the property at issue abutted a public road. Thus, the threshold circumstance upon which § 18-3-1 is premised -- that the property is not adjacent to a public road -- was not disputed in that case. Because the Coatses have not established the existence of a genuine issue of material fact regarding whether the section 15 property, including the 80-acre portion, which is a single tract or body of land, is not adjacent or contiguous to any public road or highway, § 18-3-1 does not supply a means to acquire a right-of-way to that property.

## III.

The Coatses also contend that they established the existence of a genuine issue of material fact, thus precluding summary judgment, regarding whether they were entitled to the proposed right-of-way over the farm road to provide access to the section 10 property. As noted above, the section 10 property lies to the north of both the Ayers property and the section 15 property and is separated from those properties by the Robertson property. Stacy, and her predecessor in title, Prewitt, previously used the farm road to access the western portion of the section 15 property (at the 80-acre portion) and then cross over the Robertson property to the section 10 property. The Coatses contend that the section

10 property is undisputedly not adjacent or contiguous to any public road or highway, that the farm road can be used to provide access from a public road to the section 10 property, and that the circuit court failed to address this theory in its judgment.[4]

The Ayerses contend, however, that, because the farm road does not lead to the section 10 property, the Coatses "will still have to cross the land of another" -- that is, the Robertson property -- "to access" the section 10 property and, thus, that the proposed right-of way "will not afford the Coats[es] reasonably adequate access." Ayerses' brief at 24. They contend that there is no right to seek a right-of-way for "'almost access' to landlocked property," id. at 25, and they note that the Coatses did not commence an action to acquire a right-of-way over the Robertson property.

A similar issue was addressed in Tate v. Loper, 459 So. 2d 892 (Ala. Civ. App. 1984). In that case, the Lopers owned a parcel of land that, like

---

[4]In their response to the summary-judgment motion, the Coatses alleged that, even though Stacy now owns all of the section 15 property, including the 80-acre portion, the section 10 property "was and still remains landlocked." In their postjudgment motion, the Coatses noted that the circuit court "did not address this particular parcel of property[,] which is also the subject of ... [their] action."

the section 10 property, was not adjacent or contiguous to a public road or highway. 459 So. 2d at 894. They sought a right-of-way over what was described as the "old woods road," which ran across the Tates' neighboring property and then over the property of a third party to a public highway. The trial court awarded a right-of-way over the "old woods road" on the Tates' property. On appeal, the Tates challenged whether a right-of-way could be awarded on only a portion of the route that would provide access to landlocked property:

> "The Tates ... contend that condemnation is improper because there is a landowner whose land intervenes between the public highway and the [Tates' land]. In other words, the Lopers must go through the Tates' land and then the intervening landowner's land before reaching the highway. ... The Tates contend that the statute does not provide for condemning only a portion of the land between the public highway and the [Lopers' land]."

459 So. 2d at 895.

The Court of Civil Appeals found this argument to be without "merit," stating:

> "As mentioned earlier, § 18-3-1 has no field of operation where a landowner already has reasonable access to the public highway. In the present case, the Lopers have permission from the intervening landowner to cross his land on the 'old woods road,' the very road that runs through the Tates' land and was condemned as a right-of-way. Obviously,

23

> the Lopers have reasonably adequate access through this land to the highway so that any attempt to condemn for a right-of-way under § 18-3-1 would appear to be futile."

Id. (emphasis added; citation omitted).

In this case, Stacy testified in her deposition that she had "verbal permission" to cross the Robertson property from the western portion of the section 15 property, and she testified in an affidavit that she had never been denied permission to cross the Robertson property. The Coatses further presented substantial evidence demonstrating that they have no "existing, reasonably adequate means of access" to this landlocked property, Key, 973 So. 2d at 366 (emphasis omitted), because they have presented evidence indicating that they cannot travel from New River Road across the section 15 property to where they can in turn access the section 10 property from it over the Robertson property. There is substantial evidence, however, demonstrating that the farm road could provide the access that they need. Because there is substantial evidence demonstrating that the Coatses have permission to cross the Robertson property, Tate indicates that there is no requirement that they seek a right-of-way over it. Thus, the circuit court erred in entering a summary judgment in favor of the Ayerses.

## Conclusion

Because the section 10 property is "landlocked" for purposes of § 18-3-1, and because there is a genuine issue of material fact regarding whether the Coatses have an existing, reasonable means to access that property, the circuit court's judgment is reversed and the case is remanded for proceedings consistent with this opinion.

REVERSED AND REMANDED.

Parker, C.J., and Bryan, Mendheim, and Mitchell, JJ., concur.